## Morrill et al. *vs.* Menifee's Administrators.

The doctrines established in *Hill's administrators, et al., vs. Mitchell et al.* ante p. 608, affirmed.

An administrator cannot, as such maintain ejectment against a tenant in possession of lands belonging to the intestate.

This was an action of ejectment, tried in the Conway circuit court in October, 1843, before the Hon. Richard C. S. Brown, one of the circuit judges. Howard and others, as administrators of Nimrod Menifee, sued Berger & Morrill for the possession of a lot of land in Lewisburg, alleged in the declaration to have belonged to their intestate, and to which they claimed right of possession generally as his administrators. The court, sitting as a jury, found for plaintiffs, and judgment accordingly. Motion for new trial overruled, exceptions, and appeal. The evidence produced by the plaintiffs was, title in their intestate, and possession by defendant when suit commenced.

The case was argued here by *Cummins* for appellants, and *Linton & Batson*, for appellees.

By the court, Lacy J. This case falls within the doctrines settled in *Hill's administrators, vs. Mitchell et al.*, decided at this term, and the judgment below is reversed, because the court, in refusing to grant a new trial, decided that an administrator could maintain an action of ejectment against the tenant in possession.

RINGO C. J., dissenting. This is an action of ejectment instituted by the appellants, as administrators of the estate of Nimrod Menifee, deceased, against the appellants, to recover a certain lot or parcel of land situated in the town of Lewisburg. The case was tried upon the general issue, which being joined for the plaintiffs, judgment was thereupon pronounced, that they recover of the defendants the land mentioned in the declaration and costs of suit, the damages being remitted. The defendants below moved the court for a new trial, which was refused, and thereupon excepted to the opinion of the court refusing said motion, and filed their bills of exceptions, setting forth all of the testimony adduced upon the trial, which was signed and sealed by the court, and ordered to be made a part of the record of the cause: and then prayed an appeal to this court, which was granted, and duly prosecuted. It appears from the record that the plaintiffs produced and read as testimony on the trial, a patent from the United States, granting to their intestate a certain tract of land, and proved that the land in controversy is parcel of said tract, and that the defendants were in possession thereof at the time of the institution of this suit, and held the same at the time of the trial, and that this was all the evidence adduced.

The principal question presented by the record and assignment of errors is this: Is the administration entitled by law to the possession of lands, in which his intestate died seized of a fee simple estate? If so, the new trial was rightly refused: if otherwise, the judgment is wrong, and ought to have been arrested by the court or set aside on the motion of the defendant.

This question, according to the view which I take of it, depends principally, if not exclusively, upon the various provisions of the several statutes prescribing what disposition shall be made of the estates of deceased persons. Because, as is known to every one and must be conceded by all, the common law of England prescribing the rule of descent as to real estate, was never adopted in the United States, nor did it exist in the colonies prior to the revolution, as is established by the cases *Noel vs. Robinson*, 2 *Ventris*, 358. *Blankard vs. Galdy*, 4 *Mod.* 226, and *Manning vs. Spooner*, 3 *Ves.*, *Jr.*, 118. See also, *Toller on Exr's.*, 416. It certainly never had any existence in this

Morrill et al. *vs.* Menifee's Administrators.

State; nor were any of the English statutes of descents and distributions ever in force or re-enacted here. The question, therefore, in all its essential parts, depends upon and should be determined by a just and consistent interpretation of all the statutory provisions relating to the subject, without reference to the common law, unless such reference shall be found necessary, to ascertain not the person upon whom the descent is cast, for this is expressly and explicitly declared in the statute concerning descents and distributions, but the incidents, character and duration of such interests or estates, as the law grants or carves out of the various estates of the testator or intestate. Having premised thus much, I shall proceed to state, as concisely as possible, what I consider to be the true rule on the subject, prescribed by the statutes.

In the first place, then, I consider the leading and principal rule to be this: That the estate of every description, not determined by his death, of a person who dies intestate, descends to his heir, if he leaves any surviving. This, I understand, to be the rule clearly and explicitly declared by the 1st section of the 49th chapter of the Revised Statutes, which enacts, that "When any person shall die having title to any real estate of inheritance or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner: first, to children, or their descendants, in equal parts; second, if there be no children, then to the father, then to the mother: if no mother, then to the brothers and sisters, or their descendants, in equal parts; third, if there be no children, nor their descendants, father, mother, brothers or sisters, nor their descendants, then to the grand father, grand mother, uncles and aunts, and their descendants, in equal parts; and so on in other cases without end, passing to the nearest lineal ancestor and their children and their descendants in equal parts."

The language of this statute I consider as imperative as it is explicit; and it must certainly control the common law, if on this subject it was ever in force here, and abrogate or supersede the rule thereby prescribed, so far as they conflict with other, in regard to the descent

of either the real or personal estate of the intestate. It transfers the whole estate without discrimination, as well by express language, as according to its spirit and the genius and obvious policy of the government, from the intestate to the heir. Yet, notwithstanding it vests the fee, *allodium*, or absolute right of property in the estate, in the heir, so as to preserve the inheritance unbroken, it is so cast upon him subject "to the intestate's debts and the widow's dower," which must be satisfied out of it in the manner prescribed by the dower and administration laws—that is, while he takes the pure *allodium* (if I may be allowed to apply such term to slaves and other personal estate) in the whole estate, the law, at the same time, carves out of it certain smaller interests or estates, which must always encumber, and generally, for a limited time, supersede his right to the possession and enjoyment of the estate, and in some instances, and on some occasions, divest his estate altogether. Thus, for instance, in that portion of the estate allowed to the widow as dower, his right of possession and enjoyment is suspended during her life time, notwithstanding he retains the pure or simple right of property, and the estate entire reverts to him at her death. This is the case in respect to land and slaves, according to the express provisions of the statute relating to dower. In the other personal estate given to her the widow takes the absolute property, and the law thereby divests the heir of all right or interest therein. To this extent the law encumbers and affects the inheritance of the heir in favor of the widow, whose claims are to be first satisfied out of the estate, and the law, by express provision, makes it the duty of the heir, upon whom it casts the inheritance, to assign or set apart to her, so much of the estate as she is entitled to as dower.

The law also charges and encumbers the whole residue of the estate, with the debts of the intestate; and mainly for the purpose of securing and preserving the estate, as well for the creditors as for the heir of the intestate, who is frequently either a minor or absent, and therefore, not competent or in a situation to take charge of, collect, preserve, disburse and distribute the estate, or properly protect the various rights of those interested in it, the law provides for the appointment of an administrator and makes him, to these ends, the legal representative of the intestate, and for these purposes vests in him a legal right of

possession in the whole residue of the estate, which, as above stated, is charged with the debts of the intestate, with the power to sell and dispose of the same in the manner specially prescribed by the statute relating to administrations. Thus carving out of the *allodium*, or pure and simple right of property cast upon the heir, a limited interest or estate, which vests in the administrator as a naked trustee, possessing therein no beneficial interest whatever, for the purposes specially prescribed by law; that is, for the purpose of reducing into possession, preserving and disposing of the estate in such manner as will most advance the interest respectively of those entitled to share it. And hence, the law expressly requires the administrator, "immediately after receiving his letters, to collect and take into possession the goods and chattels, moneys, books, papers and evidences of debts of the testator or intestator, except the property reserved by this act to the widow." *Rev. St.*, *ch.* 4, *sec.* 43. The property here mentioned as the absolute property of the widow, I understand, to be that which she is entitled by virtue of the provisions of the 62d of the same statute, which declares, that "in addition to dower, a widow shall be allowed to keep as her absolute property, all the wearing apparel of the family, her wheels, looms and other implements of industry: all yarn cloth and clothing, made up in the family for their own use, such grain, meat, vegetables, groceries, and other provisions, as may be necessary for the subsistence of the widow and her family for twelve months, and as many beds, with bedding and such other household furniture, as shall be necessary for herself and the family of the deceased, residing with her and under her control." With this property the administrator has no right to intermeddle, because the law, upon the most urgent considerations of charity, as well as upon the soundest principles of justice and public policy, transfers it to the widow in absolute property, as necessary to the support of the family for a period of time, within which the law presumes she will be able to provide such other means of support as may be necessary: and in this property the estate of the heir is divested by law, whenever it is claimed and possessed by the widow or set apart for her. But, with the exception of the property thus allowed to the widow for the maintainance of herself and family, the law not only requires the administrator to

take possession of all the personal estate of his intestate, but also requires him to make a true and perfect inventory thereof, cause the same to be appraised and sell the same, except slaves and specific bequests, and to hire out slaves under the direction of the court of probate, and charges him with the value of the whole; that is, with the amount of the accounts and evidences of debt, the account of sales of such property as he sells, the appraised value of the residue and the hire of the slaves. *Rev. St., ch.* 4, *sec.* 43, 44, 45, 46, 51, 52, 53, 54, 56, 65, 70, 79, 105, 164, 166. The administrator, by the 71st section of this statute, is authorized, if his intestate died "leaving a crop ungathered or in an unfinished state, so that the estate would suffer loss from the want of care and additional labor" "until the meeting of the court of probate to procure such labor to be performed as may be indispensable to the saving such crop, and the court of probate may in 'such cases, authorize such further labor to be performed as the interest of the estate may require, and all sums of money paid for any such labor, if approved by the court, shall be allowed as expenses of administrator." This, I think, shows the right of the administrator to the possession of the land in cultivation at the death of the intestate; because, it being made his duty to enter upon and cultivate the soil, if the interest of the estate demands it, the performance of this duty constitutes him the actual possessor thereof, for such time at least, as may be necessary to complete the cultivation of the crop and preserve it until it is fully matured, severed from the land and taken away. And the 139th section, which provides, that "until the widow's dower be apportioned, the court shall order such sum to be paid to her out of the hire of the slaves and *the rent of the real estate,* as shall be in proportion to her interest in the slaves and the real estate," appears to me, to imply most clearly, the right of the administrator to the rents and profits of the real estate as well as the hire of the slaves, which is expressly given to him by the 70th section; because it cannot be reasonably doubted, that in directing such payment to be made to the widow, the law contemplates that it shall be made by the administrator: and thus imposes upon him a legal duty and at the same time, unless he is entitled to the possession both of the slaves and real estate, withholds from him the power necessary to enable

him to perform it: for it surely cannot be contended, that he may lawfully lease the lands and receive the rents, without having either the possession or right of possession therein; and yet such is indispensable to the performance of this duty. These provisions of law certainly indicate clearly, that the administrator has an interest in and right to the possession of the lands of his intestate. But there are other provisions, which appear to me, to establish his right conclusively. The 72d section declares, that "all improvements made on the public lands of the United States, by a testator or intestate, shall be assets in the hands of the executor or administrator, unless the same may have been disposed of by will;" and the 145th section enacts, that lands and tenements shall be assets in the hands of every executor or administrator, for the payment of the debts of the testator or intestate." Now, while it is perfectly manifest, that the law of descents and distributions casts the inheritance upon the heir, subject to the payment of debts and the widow's dower, it is equally clear, that the executor or administrator is the legal representative of the whole estate of the deceased, not taken by the widow as dower, and for the support of herself and family, for the special purpose of collecting and preserving it and satisfying the personal obligations of his testator or intestate, all of which, the law makes it his duty to perform, if the estate is sufficient therefor, and distributing the residue, if any. And it cannot be doubted, that the whole of the real estate, exclusive of dower, is charged with the debts of the intestaste; and therefore, in the absence of other legal authority, I consider it clear, upon well established legal principles, that the principal estate would carry with it all incidental rights attached to it, of which character, I deem the rents and profits. And although the law does not, in express terms, declare that the administrator shall have the possession of lands, yet if the lands are, as the statute explicitly declares they shall be, unconditionally and unqualifiedly, assets in his hands for the payment of debts, to make them entirely and completely answerable for the debts from the death of the intestate, the administrator must of necessity, have the right of possession until the debts are satisfied, when they revert to the heir, otherwise, the creditors must lose the intermediate rents, which I cannot believe, it was designed should go to the heir, while the estate, out of which they

spring, is held subject to the claims of creditors. The effect of this principal is to sever the principal estate from its incidents, and allow the heir to retain the latter, though divested of his right to the former, against claims of creditors, and the obvious design of the law, which unquestionably is to subject the *whole estate*, not covered by the claims of the widow, to the payment of the debts of the intestate. Nor do I consider the argument drawn from the fact, that the law prescribes a particular mode of proceeding to be observed by the administrator in regard to the sale of real estate, entitled to much weight. It being designed, as I conceive, solely to guard more effectually, the rights of the heir in this species of property, which not being so liable to perish as personal estate, is deemed more important to be preserved in kind for his use, and is presumed to be more esteemed by him; and hence, the power to sell it is withheld from the administrator, until a deficiency in the personal estate to meet the demands of justice is shown, and an order for the sale obtained from a different authority, and wholly impartial tribunal, after notice given to every person interested in the estate, of his intention to apply therefor. Thus making the court of probate, instead of the administrator, the arbiter to determine whether there exists any necessity for the sale thereof, and without the existence of which, the inheritance must be preserved to the heir, and his absolute right to the land cannot be divested. But such deficiency in the personal estate being shown, the court of probate has no discretion to refuse the order of sale, and upon the sale the administrator conveys the title, not by virtue of an authority derived from the court of probate, but by virtue of the estate and authority vested in him by law, as the legal representative of the intestate; and the reason he is not required to make an inventory of the land, as of the personal estate, is because it is immovable and imperishable, and not susceptible of being removed or converted to any use other than that prescribed by law. And although the administrator is required to sell the personal estate, yet he has no authority to sell it in any manner other than that prescribed by law, because he holds it as he does the slaves and lands, as a naked trustee, possessing therein no beneficial interest whatever, and therefore, in the disposition thereof, his acts, to be valid, must conform to the rules prescribed

by law. The rule, therefore, does not, I think, differ, but is the same as regards every description of estate, so far as relates to the transfer of title on the sale thereof by the administrator. And whether the sale be made in pursuance of an order of court, when the law requires such order, or without it, when not required, the legal title passes through him, and the heir is divested thereof by his act, done as administrator in the manner and according to the conditions and rules prescribed by law. So, where his intestate is, by contract entered into in his life time, bound for the conveyance of land or tenements, the circuit court, on the petition of the party desiring the specific performance, without in any manner noticing the heir, may enforce the performance of such contract by decree against the administrator, and compel him to make, execute, acknowledge and deliver to the petitioner a deed, which shall be as effectual in law and equity, as if it had been executed by the testate in his life. *Rev. St.*, *ch.* 4, *sec.* 167, 168, 169. Thus showing, that the law throughout, makes the administrator the personal representative of his intestate, not only as respects the personal estate, but the real estate also. So the same effect as regards this question, are sections 162 and 163, of the same statute.

The judgment of the circuit court pronounced in this case is, therefore, in my opinion, correct, and ought to be affirmed; wherefore, I dissent from the opinion of this court reversing it. Judgment reversed.